HENRI NOURRY, Respondent, *v.* SAMUEL LORD, impleaded with JAMES S. TAYLOR, Appellant.

Where evidence upon the question of an agreement between parties is conflicting, it is not error to deny a motion for nonsuit. The question is properly one for a jury.

Where an architect submitted plans for a building, claiming that the same were submitted by direction of the defendant under an agreement to pay for them, and afterwards took them away, it was not error, in a suit to recover for their value, to charge that the taking away of the plans by the plaintiff, was a circumstance entitled to consideration, but was not of itself an admission that his services were wholly voluntary and without any idea of compensation.

An architect is a competent witness in his own behalf, upon the question of the value of his labor in drawing plans.

APPEAL from judgment of New York Common Pleas.

The action was to recover for services as an architect in drawing plans for a building to be erected by the firm of Lord & Taylor, the defendants.

The complaint alleged that the defendants employed the plaintiff in his capacity of an architect to draw plans for a building to be used by them in their business, to be erected on the corner of Broadway and Grand street, in the city of New York; that it was agreed and understood that, if the plans should suit and be accepted by the defendants, the plaintiff should act as superintendent in the construction of the building, and receive as remuneration therefor three per cent on the cost; that the plans were drawn and exhibited to the defendants, who were satisfied with and accepted the same; that, notwithstanding, the defendants refused to pay for the plans and employed another architect; and that plaintiff's services in the premises were worth five hundred dollars. The defendants answered denying specifically the allegations of the complaint or any employment of the plaintiff whatsoever.

The action was tried in February, 1859, before Judge BRADY and a jury.

On the trial, it appeared that the plaintiff was a French architect; had worked in Paris at his profession and also in Boston, having been in this country about two years; had also worked in New York. On being sworn as a witness in his own behalf, he testified, in substance, that, in the fall of 1856, he called at Lord & Taylor's store with a letter of introduction from a Mr. Don, of Boston, and spoke to Mr. Lord about a building on Broadway, saying to him that he would be glad to draw the plans; Lord stated that they had no intention to build then, perhaps they would the next spring; he requested the witness to come and see him again, and the witness left him his card; in February, 1857, he called on Lord again, and spoke about the building; witness told him he had drawn the plans for the opera house in Boston, and exhibited some plans to him; Lord said they wanted something in the Parisian style, some plan to equal any thing in Paris; he then told the plaintiff to make the plans; in March, the plaintiff and Lord had another interview; a friend of the plaintiff named Cherniez, being present; Lord then again told the plaintiff to draw the plans and come again; afterward, the plaintiff drew the plans and took them to him; he said the plans were beautifully drawn, but said, "I have great difficulty with the Pacific Bank, and I do not know whether I can build;" he requested the plaintiff to leave the plans, saying that he would show them to his friend Mr. Cottinet, and get his opinion; the plaintiff proffered to superintend the work for three per cent, and Lord said he would see him about it; he said if he could not make an arrangement with the Pacific Bank he could not go on and build; the plaintiff called subsequently, but did not see Lord, and when he saw they had commenced to build without employing him, he sent his friend to Lord & Taylor's store for the plans.

Victor Cherniez, a witness for plaintiff, testified that he was present at the March interview between the plaintiff and Lord; that Lord told plaintiff that he might draw the plans, and, if he was satisfied with them, he would be employed as architect and superintendent in the erection of the building

in question; he said the building was for Lord & Taylor; about a month afterward he went again with the plaintiff to Lord & Taylor's store; saw Lord, and plaintiff exhibited the plans to him that he had drawn; Lord remarked that they were beautiful, but objected to the staircase, and desired to have that altered; he told plaintiff he might leave the plan; that his partner, Mr. Taylor, was in Europe; that the firm of Lord & Taylor desired to have the handsomest store in Broad·way—equal to any in Paris; that the plans were beautiful, and he would show them to his friends, particularly to Mr. Cottinet; he further stated that he had difficulty with the Pacific Bank; the bank had a lease of the corner, and he did not know whether he could settle the matter with them; plaintiff might leave the plans; he would examine them, and would call on the plaintiff and let him know when the difficulty with the Pacific Bank was arranged; the plans were left with Lord in his office; the witness and plaintiff went several times to Lord & Taylor's store afterward, but did not see Lord; subsequently, at plaintiff's direction, the witness got the plans back; the defendant's clerk gave up the plans to him; they are the same shown to the witness. [The plaintiff here introduced the plans in evidence, and they were marked as exhibits in the case.]

The plaintiff was asked what it was worth to draw the plans. The defendant objected to the question on the ground that no foundation had been laid therefor. The objection was overruled, and the witness answered: It was worth $500.

Frederick A. Petersen was called for plaintiff and testified: These plans show on their face a fire-proof building, finished in artistic style; the elevations are artistically drawn; they show the fronts of eighty feet by one hundred feet in depth. The witness was then asked, "what is it worth to draw those plans?" The defendants objected as incompetent. Objection overruled, and the witness answered: "It was worth one per cent on the cost of the building." The building shown in the plans would cost $60,000 or $70,000.

The plaintiff then rested, and defendants' counsel moved to dismiss the complaint on the ground that there was no

evidence of any contract with or employment of plaintiff by defendant Lord; that there was no evidence of any joint undertaking by defendants, nor was there any evidence of performance of services for defendant Lord. The motion was denied, and the defendants excepted.

Samuel Lord, one of the defendants, was then sworn as a witness on his own behalf. He testified, in substance, that the plaintiff called upon him (he thought in January, 1857), and wished to draw some plans and submit to him; that he told him that his arrangements for building were entirely unsettled; that the Pacific Bank had a lease for part of the ground, and that he could do nothing until he arranged with them; he did not at this interview tell the plaintiff to draw the plans, or employ him in any way; told him Mr. Thomas was his architect; some time after this, plaintiff brought some plans to his office, and exhibited them to him; he told him he thought they were beautiful plans, but not adapted for use; the first story and cellar could not be so constructed from the nature of the ground; that they were very elaborate, but he could not get the part of the premises occupied by the Pacific Bank, and could not make use of them; that he had not made any arrangements with the bank that had a four years' lease of the corner part of the premises; the plaintiff left the plans, and some time after this conversation he sent some one and took them away; it was a year after the plans were left with him, as stated; he commenced building on part of the ground; Mr. Thomas was his architect; he applied to Thomas for plans in February or March, 1858; he thinks the plaintiff's plans had been altered since he had them last; the plan of plaintiff's now shown him could not be used; it covers more ground than defendant owns; a cellar could not be dug there as shown, from the nature of the ground. The witness further stated that he owned the land himself on which the building was to be erected, Mr. Taylor having no interest in it; the corner on which the Pacific Bank is situated is included in his deed; it was a matter of newspaper and common report that Lord & Taylor had bought the premises and were

going to put up a store there; at the first interview with the plaintiff he said he would like to show him (Lord) some of his plans for the purpose of showing him what he could do; he (Lord) gave him no dimensions of the premises, nor any particulars relating to them; there was not a word said about paying him for superintending or for these plans.

Griffith Thomas, called for defendants, testified: That he. was an architect; knew the premises in question, corner of Broadway and Grand street; the bank is located on the corner; was employed by Lord as his architect in building there; commenced his plans in April or May, 1858, just before the building was commenced; his plans do not contemplate the extension of the building to the corner, and are not at all like those of the plaintiff; the front of the building he is now erecting there for Mr. Lord covers fifty-four feet six inches; he never saw plaintiff's plans before. [On being shown plaintiff's plans in court he was asked, "Are those plans practicable?" Objected to by plaintiff, and the objection sustained, and defendants excepted.] This witness subsequently testified that he had examined in court the plaintiff's plans, and stated at large in what respect he deemed them impracticable, concluding with the opinion that as they now are they are not worth a cent. The defendants renewed the motion to dismiss the complaint, which was denied, and exception taken.

The judge charged the jury that there were two questions to be decided in the case: First, was the plaintiff employed to draw a plan of the building for the defendants, Lord & Taylor? and, second, if so, what was its value? The defendant Lord does not rest his defense on any conditional employment. It seems to be conceded that it was not a conditional employment. [To this last remark defendants excepted.] The taking away of his plans, by the plaintiff, instead of leaving them with the defendant, is a circumstance entitled to consideration, but does not, of itself, amount to a recognition of the defendants' version of the matter, that the services were wholly voluntary, and without any idea of compensation. [To this paragraph of the charge

the defendants excepted.] There seems to be no doubt that Mr. Lord intended to cover the whole ground conveyed to him at some future time, and it was this intention evidently which led him to speak of his difficulty with his lessees, the Pacific Bank. I do not, therefore, understand that the difficulty with the bank has any thing to do with the alleged employment of the plaintiff. [To this remark of the judge the defendants excepted.] If you find there was an employment, the next question is, what was the value of the services? and that is a question solely for you to decide. There is no dispute that the plaintiff drew a plan. The question is, was it of any value? If you think it was not, then you will find for the defendants; if it was, then you will determine the amount from the testimony of the witnesses.

The judge further charged: Another question arises in the case, how far is the defendant Taylor liable for the acts of Mr. Lord? Mr. Lord was the managing partner of the firm; and if you believe that this building was intended for the use of the firm, then he is liable. To this the defendants excepted.

The defendants' counsel requested the judge to charge the jury as follows:

1. That, to entitle the plaintiff to recover at all, the jury must be satisfied that he was employed by both of the defendants, and that there could be no recovery against one of them only.

2. That if the jury should believe that there was a conditional employment by the defendant Lord, which was not to become binding unless he arranged his matters with the Pacific Bank, and concluded to build upon the entire premises, and that those conditions had not been obviated, then the defendants were not liable.

3. That the taking away of the plaintiff's plans, by his agent, amounted, in law, to an admission that there was no binding agreement between the parties.

4. That if the jury should believe that the plan drawn by the plaintiff was not adapted to the dimensions of the ground owned by the defendant Lord, nor to the condition of the

soil for such building, the plaintiff could recover nothing for drawing it, and that there was no testimony upon those points in contradiction to the evidence of the witness Thomas.

The judge refused so to charge, and there was a general exception to such refusal.

The jury rendered a verdict against the defendant Lord, for $124; and in favor of the defendant Taylor.

Judgment was entered on the verdict in favor of the plaintiff against the defendant Lord for $215.04, damages and costs; and for the defendant Taylor against the plaintiff for $87.04 costs.

The defendant Lord appealed to the General Term from the judgment, and it was affirmed. He now appeals to this court.

*W. R. Stafford*, for the appellant.

*H. H. Morange*, for the respondent.

WRIGHT, J. It was not error to deny the motion for a nonsuit. The general question was, whether the plaintiff was employed by the defendants to draw a plan of a building for them. Upon the question the evidence was conflicting. The parties themselves were the principal witnesses. The plaintiff testified distinctly that he was employed by the defendant Lord, to draw the plan of a building that the defendants contemplated erecting on Broadway near to Grand street; and that accordingly he prepared and submitted such plan to Lord. In this he was corroborated by another witness. On the contrary, Lord testified that he never employed the plaintiff to draw any plans for him. His version was this, in substance: The plaintiff came to him in January, 1857, with a letter of introduction from a gentleman residing in Boston; he stated that he wished to be introduced as an architect; that understanding the defendants were about to build in Broadway, he would like to show him what he could do, and would draw some plans and submit them to him. He (Lord) informed him that he could not use the ground for some time to come, and that his plans as

to building were entirely unsettled. He did not tell him to draw any plans, or employ him in any way; but informed him that Mr. Thomas was his architect. Some time after this interview the plaintiff brought some plans to his (Lord's) office, and showed them to him. He told him he thought they were beautiful plans but not adapted for use, the first story and cellar could not be so constructed from the nature of the ground; they were very elaborate, but he could not get the part of the premises occupied by the Pacific Bank, and could not make use of them. Shortly after this conversation, the plaintiff sent some one and took the plans away.

The proof was therefore conflicting upon the point, whether the defendant Lord actually employed the plaintiff to draw plans, or whether they were drawn and submitted on the part of the plaintiff without any agreement or employment. There was sufficient evidence to go to the jury upon the question, whether there was a positive and distinct employment of the plaintiff by Lord to draw the plan; and it was not error to submit the question to them.

The judge charged, that the questions in the case were, whether the plaintiff was employed to draw a plan of a building for the defendants; and, if so, what was its value? If the jury found that there was an employment, they were then to determine the value of the service; there was no dispute that the plaintiff drew a plan, and it was for them to decide whether it was of any value; if they thought it was not, they would find for the defendants; if it was, then they were to determine the amount from the testimony of the witnesses. To this general presentation of the case there was no exception, save to the remark of the judge, that there was no dispute that the plaintiff drew a plan; which exception was without any significance. There was no dispute that the plaintiff drew a plan for the building; the only question being, whether such service was on the retainer or employment of the defendant. But portions of the charge, or rather comments of the judge upon the testimony, were singled out for exception; and it is to be seen whether in these there was error for which the judgment should be

reversed. The judge, after stating what the questions were, remarked, "that the defendant Lord did not rest his defense on any conditional employment. It seemed to be conceded, that it was not a conditional employment." This cannot be regarded as an instruction to the jury upon any legal point in the case. As matter of fact, the remarks were entirely correct. Lord neither on his answer nor in his testimony rested his defense upon the grounds of a conditional employment. He denied any employment whatever of the plaintiff, and the defense was conducted throughout upon that theory.

Again, in commenting upon the testimony, the judge remarked, "that the taking away of his plans by the plaintiff, instead of leaving them with the defendant, was a circumstance entitled to consideration, but did not of itself amount to a recognition of the defendant's version of the matter—that the services were wholly voluntary, and without any idea of compensation." There was no error here. As has been said, the testimony conflicted upon the point, as to any employment of the plaintiff. The proof on his part tended to establish a retainer or employment by Lord to draw plans for the building; which plans were to be prepared and submitted to Lord, whether he concluded to engage the plaintiff as architect or not; while the defendant's evidence tended to the conclusion that without any retainer he volunteered to prepare plans or sketches of a building for the purpose of showing his capacity as an architect, with no idea of compensation unless they were adopted. The plaintiff, after preparing plans, and submitting them to, and leaving them in Lord's possession, subsequently took them away. In speaking of the general question in conflict, as whether Lord employed the plaintiff to draw the plans, or whether his services on the premises were wholly voluntary and without expectation of payment therefor, the remark was made by the judge, that the fact that the plaintiff took away his plans, instead of leaving them with the defendant, was a circumstance to be taken into consideration by the jury, in determining which version was the true one; but that the fact did not of itself settle the question in favor of the defendant's

version of the matter. This, if it is to be regarded as any thing more than a running comment upon the testimony, detached from portions of the charge not given, was unexceptionable. Again, the judge observed, in the course of the charge, that there seemed to be no doubt that Mr. Lord intended to cover the whole ground conveyed to him, at some future time, and it was this intention evidently which led him to speak of his difficulty with his lessees, the Pacific Bank; and that he (the judge), did not, therefore, understand that the difficulty with the bank has any thing to do with the alleged employment of the plaintiff. This was simply the expression of an opinion upon a matter of fact, and no ground for exception. The judge, however, was quite right in his understanding of the subject. The difficulty with the bank had nothing to do with the alleged employment of the plaintiff. When Lord employed the plaintiff to draw plans for a building (as the jury by their verdict have found that he did), it was contemplated that it should cover the whole premises. It was afterward that, failing to make terms with the bank to relinquish its lease of the corner part of the lot, the original intention was abandoned.

There is no substance in the objection to the question put to the plaintiff as to the value of the labor bestowed on the plans. He was an architect by profession. He had followed his profession in Paris, and for two years in this country, and was competent to speak as to the value of his labor. Nor was there any point in a similar question put to the witness Petersen. There was evidence tending to show that Petersen was an architect by profession. The plaintiff testified that he came from Boston to New York just before applying to Mr. Lord, and had since worked in the employ of Petersen. But it is a conclusive answer that the objection to the question was not placed on the ground that the witness was not an expert. Had it been, it might readily have been obviated.

Upon the whole, I can discover no error upon the trial prejudicing the appellant. The plaintiff drew plans for the building. The jury have found, as I think upon sufficient

evidence, that the service was performed upon the retainer of the appellant. The jury have also negatived the idea that it was a condition of the employment that nothing was to be paid for the labor of preparing the plans unless the appellant adopted them. The plaintiff was entitled to be compensated for his labor, and the jury have fixed the compensation at a sum less than the evidence, if credited, justified.

The judgment should be affirmed.

All the judges concurring,

Judgment affirmed.